_____

SO ORDERED,

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: January 3, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  JENNIFER MARIE LOUY LEE          CASE NO. 15-51935-KMS

DEBTOR                                                    CHAPTER 13

## ORDER OVERRULING OBJECTION TO CONFIRMATION

Before the Court is the Objection to Confirmation of Plan (Dkt. No. 49) filed by Creditor Eugene Ullman. The Court held a hearing on the objection on October 17, 2016, and provided the parties an opportunity to supplement their briefing. Dkt. No. 68. Having received the supplemental briefing and having considered the arguments and evidence in this case, the Court finds that the objection should be overruled.

### I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), & (O).

1

## II. Findings of Fact[1]

Prior to filing bankruptcy, Debtor Jennifer Marie Louy Lee, who works as a casino Marketing and Entertainment Manager (Dkt. No. 4 at 13), built a home in Biloxi, Mississippi. Lee's boyfriend at the time, Ryan Alexander, worked as a pool contractor. The two intended to build the home as a "spec house," meaning that the home was built without the intention of either Lee or Alexander living in it but rather to sell it for a profit. The financing for the construction was obtained in Lee's name only because of Alexander's poor credit. Lee was also named the general contractor for the construction project. At some time before construction on the home was completed, Lee and Alexander broke up. During construction Lee, through Alexander, employed Creditor Eugene Ullman, a friend of Alexander, as a subcontractor. Ullman had seventeen years of experience working as a contractor. Ullman was injured on April 9, 2015, while cleaning a clogged paint sprayer. Ullman was permanently blinded in one eye as a result of the injury.

In early June 2015, Ullman retained counsel and filed a petition to controvert before the Mississippi Workers' Compensation Commission ("the Commission"). On June 30, 2015, Lee retained counsel, and attorneys for both parties had settlement discussions over the next few months. At the end of September 2015, Lee gave notice to her landlord that she was terminating her lease.[2] Lee had informed her landlord in December of 2014 that she would be leaving and continued her lease on a month-to-month basis, though at that time, Lee had no intention of moving into the home she was building. Instead, she intended to move with Alexander into a different house. The subsequent breakup ended those plans and in October 2015, Lee moved into the completed home.

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable here by Federal Rules of Bankruptcy Procedure 9014(c) and 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[2] The permanent financing on the home closed on September 29, 2015. *See* Claim 3-1.

On October 21, 2015, Ullman first proposed to settle his claim for $50,000. After some further negotiation, this figure was reduced to $35,000.00. There was no signed settlement agreement. Lee conditionally agreed to the settlement if she could secure the money, but after she was unable to do so, Lee first met with her bankruptcy counsel on October 27, 2015.

Lee filed a petition for Chapter 13 relief on November 20, 2015. Dkt. No. 1. Lee scheduled an unsecured, nonpriority debt to Ullman for $300,000.00 for settlement of his workers' compensation claim. Dkt. No. 4 at 9. Lee also scheduled a house valued at $233,000.00 with a secured claim held by Franklin American Mortgage in the amount of $176,500.00. Dkt. No. 4 at 1, 7. Lee claimed the remaining equity in the home under her homestead exemption. Dkt. No. 4 at 6. Ullman filed a proof of claim in the amount of $300,000.00 on April 1, 2016. Claim 6-1. Ullman attached to his proof of claim the petition to controvert filed with the Commission. Claim 6-1 Part 2 at 1. Lee's plan proposes to pay a half of one percent of her unsecured debt. Dkt. 6 at 2.

Ullman objected to confirmation of Lee's plan on April 7, 2016. Dkt. No. 49. The Chapter 13 Trustee joined in his objection. Dkt. No. 52. Lee responded to the objection. Dkt. No. 53. The Court held the first hearing on the objection on May 5, 2016, and the parties agreed to a scheduling order for discovery at that time. Dkt. Nos. 54, 55. After the close of discovery, Lee supplemented her response, and Ullman replied. Dkt. Nos. 59, 62. The Court held a second hearing on the objection on August 25, 2016, and ordered Ullman to respond to discovery. Dkt. No. 64. The Court held the third and final hearing on the objection on October 17, 2016. Both Lee and Ullman testified, and the parties submitted documentary evidence. Dkt. No. 68. The Court gave the parties time to submit additional briefing; only Ullman submitted an additional brief. Dkt. No. 69.

III. Conclusions of Law

3

Ullman argues that Lee has proposed her Chapter 13 plan in bad faith. Lee denies this charge and asserts that she merely exercised good bankruptcy planning. The Court "shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law. . . ." 11 U.S.C. § 1325(a)(3) (2010). Courts in the Fifth Circuit "apply a 'totality of the circumstances' test to determine whether a Chapter 13 petition and plan are filed in good faith. . . ." *Sikes v. Crager (In re Crager)*, 691 F.3d 671, 675 (5th Cir. 2012).

> Under this test, the court considers such factors as (1) the reasonableness of the proposed repayment plan, (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code, (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan. In applying this test, the bankruptcy court exacts an examination of all of the facts in order to determine the bona fides of the debtor.

*Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 346 (5th Cir. 2007) (per curiam) (citing *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir. 1987) *modified by* 836 F.2d 215, 216-17 (5th Cir. 1988)) (internal quotation marks and footnotes omitted). The same test is applied to determine whether a debtor has acted in bad faith sufficient to convert a case to Chapter 7 or dismiss it.[3] *See id.* The Supreme Court has declined "to articulate with precision what conduct qualifies as 'bad faith'," but it did "emphasize that the debtor's conduct must . . . be atypical." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 n.11 (2007). The Fifth Circuit has affirmed a finding of bad faith where the debtor "filed misleading and inaccurate schedules that attempted to conceal assets from

---

[3] Although the test is the same, the Supreme Court "limit[ed] dismissal or denial of conversion to extraordinary cases," adopting the Seventh Circuit's view that a bankruptcy court should be more willing to reject a plan for lack of good faith than to dismiss a case for the same conduct. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 n.11 (2007) (citing *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992)).

4

creditors" and was "clearly among the class of atypical debtors" indicated by the *Marrama* court. *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 663 (5th Cir. 2010).

These factors have not yet received a distinct gloss to justify a discussion of each separately, and the Court does not undertake to do so here. The Court finds the plan to be reasonable and an accurate reflection of Lee's ability to repay her debts. The Court further finds credible Lee's testimony that she intends to complete the plan. The Court acknowledges that Ullman has objected to the proposed plan. The remaining three factors deal with either inequitable or fraudulent conduct. Under the facts of this case, the Court finds the decisions related to exemption planning to be instructive because Lee converted her nonexempt property into homestead property shortly before filing. *See Martin Marietta Materials Sw., Inc. v. Lee (In re Lee)*, 309 B.R. 468, 482-87 (Bankr. W.D. Tex. 2004) (discussing generally *Murphey v. Crater (In re Crater)*, 286 B.R. 756 (Bankr. D. Ariz. 2002)).

When considering whether the conversion of an asset from nonexempt to exempt merits a denial of discharge, "the best rule is one which does not penalize bankruptcy exemption planning *per se*, and restricts [denial of discharge] to situations in which there is extrinsic evidence of fraudulent intent, apart from the intent to maximize one's exemptions." *Id.* at 482. Actual intent must be proven, but it "may be shown by circumstantial evidence." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701-02 (5th Cir. 2003) (internal quotation marks omitted). Courts look to several factors to infer any fraudulent intent:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* at 702 (quoting *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)). These factors generally apply to facts where the debtor has transferred property rather than where the debtor, as in this case, changes the usage of property without ceding title. Thus, the only factor relevant to these facts is the chronology of the homestead exemption claim, meaning that the Court must consider how quickly Lee filed bankruptcy after she moved into the home. The Court finds that Lee could not have orchestrated the timing of these events because the first settlement offer came from Ullman in October 2015, after the home was completed. The close proximity of the filing of Lee's petition and her move into the completed home and the conditional settlement of Ullman's injury claim may raise a red flag, but the Court does not find this conduct to be "part of an underlying scheme of fraud with an intent not to pay" in the absence of further evidence of fraudulent intent, which has not been shown in this case. *See In re Stanley*, 224 F. App'x at 346. While Lee did not initially build the house with the intention of making it her home, her circumstances changed. The Court finds that making the property her residence was at best something she decided to do after the break up with Alexander and at worst a mere expression of "the intent to maximize [her] exemptions" to take advantage of the bankruptcy protections codified by Congress.[4] *See In re Lee*, 309 B.R. at 482, 483 n.24 (citing H.R. Rep. No. 95-595 at 261 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5953, 6317).

> [T]ransfers made on the eve of bankruptcy with the intent to do an act that Congress permits does not amount to a[ fraudulent intent] . . . The Fifth Circuit held that under the Bankruptcy Code, Congress intended to permit debtors to maximize to the fullest extent entitled by law their exemptions, even if that meant transferring non-exempt assets to exempt assets on the eve of the bankruptcy case. And if the

---

[4] Congress considered disallowing "last minute conversions" of assets from nonexempt to exempt but chose instead to adopt the position that "conversion of property into exempt property *without more*, will not be treated as fraudulent." Collier on Bankruptcy ¶ 522.08[4] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (emphasis added). "This position protects those who have only a small amount of assets. Such debtors would possibly be left without even a minimal amount of assets after liquidation if their small amount of property was not converted into exempt property." *Id.* And while "some states are liberal in the exemptions that they allow, thus creating the possibility of abuse[,]" many states (and the federal exemption scheme) protect "only modest amounts of property." *Id.*

6

> debtors do that type of a transfer, there would not be an ill intent unless there was some element of fraud involved.

*U.S. Trustee v. Robb*, No. 3:99CV0261, 1999 WL 324655, at *2 (N.D. Tex. May 18, 1999) (quoting from bankruptcy court hearing). As to the remaining factors, the Court does not find Lee's plan to be in violation of the spirit of the Bankruptcy Code or to be the product of any "misrepresentation, unfair manipulation, or other inequities" on her part. *See In re Stanley*, 224 F. App'x at 346.

**IT IS HEREBY ORDERED THAT** the Objection to Confirmation of Plan (Dkt. No. 49) is OVERRULED.

*##END OF ORDER##*